STATE, Respondent, v. HOLLAND, Appellant.

(235 N. W. 609.)

(File No. 6865. Opinion filed March 16, 1931.)

*W. J. Jacobs,* of Faulkton, for Appellant.

*M. Q. Sharpe,* Attorney General, and *Frank S. Tait,* State's Attorney, of Gettysburg, for the State.

BROWN, J. Defendant was convicted of obtaining by false pretenses the signature of G. Huber to a check for $1,000 and procuring the money thereon. Defendant was a real estate dealer in the city of Gettysburg, S. D., and the northeast quarter of section 10-120-77 was owned by a man in Long Beach, Cal., and the northwest quarter of the same section was owned by Mrs. Prescott, who resided in Bagley, Iowa. Evidence on behalf of the state shows that on October 15, 1927, Huber, having occasion to go to defendant's office in Gettysburg on some business, in the course of conversation told defendant that he was negotiating with John Schoof, another real estate dealer, for the purchase of both the northwest and northeast quarters of said section 10, and that he had paid Schoof $100 on the northeast quarter. Defendant told Huber that he could get him the land for less money than he would have to pay if he bought through Schoof, and that he could get him the northwest quarter for $2,800. He told Huber to end his dealings through Schoof, and that he would wire the owner of the northwest quarter and make an offer of $2,800, which was less than Huber had offered for the land through Schoof. Huber said this would be all right with him. Defendant said he would get the wire out, and just as quick as he received an answer would come out to Huber's place and tell him about it. Huber said, "All right, go ahead and do so."

On Monday, October 17th, Holland came out to Huber's farm, where Huber and his son-in-law, John Knecht, and two others were at work in a field threshing flax. Huber and Knecht sat down with defendant on the running board of the auto in which defendant had driven out, and defendant said to Huber: "Everything is all right, I received a telegram from the owner of the land, and she wants a thousand dollars paid down for a first payment and

eighteen hundred dollars in ninety days' time and good title will be furnished in that time." Huber said, "All right," and handed his check book to defendant, who wrote out a check for $1,000, and Huber signed it. Defendant put the check in his pocket and drove away in the car, and Huber got the check two or three weeks later from the bank it was drawn on, with his monthly statement, in which it was deducted from the amount of his checking account. Huber further testified that he relied on and believed defendant's statement that he had a telegram from the owner of the land, and relying on and believing that to be true, he gave defendant the check. This version of the affair by Huber is substantially corroborated by Knecht.

Defendant concedes that he had received no telegram from the owner of the land, and had no negotiations or communications with her whatever at this time, relating to the land. He does claim that back in 1920 she had listed the land with him for sale at $2,800 cash. He says that he did not at any time tell Huber that he would wire the owner of the northwest quarter, nor did he represent that he had received any telegram from the owner of that quarter. He says his only talk with Huber about a telegram was that he promised to wire the owner of the northeast quarter, and that, when he drove out to Huber's place on Monday, he told Huber that he had received a telegram, but nothing was said further about the telegram, and he told him that he had drawn up two receipts the way he believed these lands could be delivered, and showed him the receipts which he said Huber read over once or twice, and then he himself read them over to Huber, and explained to him the conditions of each; that Huber asked him, "Suppose I don't get this land?" and he replied, "Then the contract provides that you are to get your money back." He says that during this conversation Knecht was standing by a wagon some seven or eight rods distant, and that Huber called him over to the car where he and defendant had been sitting on the running board; that, when Knecht came, defendant read the contract again to Knecht and Huber, and explained the provision for the return of the money, whereupon "Mr. Huber right then says, 'John, we are in hurry, let us just give the check for this and finish it up and get it over with, let us give a check for it and get through with it quick.' And so we did, and that was the winding up of it." It will be seen

that there is a direct conflict in the testimony as to how the check was obtained, and the verdict of the jury on that point is final. The receipt or contract which defendant gave to Huber at the time, and which he says Huber read twice, and then he himself read it over and explained it to Huber, and then Knecht was called over, and defendant read it over again to both of them and explained it, was written on what appears to be a letterhead used by defendant in his business, and is denominated Exhibit 1, and reads as follows:

"Choice Farm and Wild Lands for sale in Potter, Sully, Faulk and other Counties in the Missouri River Valley, the most successful farming country in the west. Lands looked after and taxes paid for non-residents.

"Correspondence solicited.

"Holland Land Agency,
"George Holland, Manager.

"Lands exchanged for merchandise.
"Town property, stocks, mortgages.

"Gettysburg, South Dakota, Oct. 17th, 1927.
"Received of G. Huber $1,000.00 as part payment on the northwest quarter of Section 10, Township 120, Range 77, Potter County, S. Dak. the balance $1800. is to be paid by or before January 17th, 1928, the full purchase price is $2800.00, at time of making payment of $1800.00 on January 17th, 1928, a deed is to be given and an abstract furnished showing good title, if the above is not done then the said $1000. is to be returned to said G. Huber, no interest is to be charged on the balance of said payment of $1800.00.

"George Holland."

Defendant had two such documents written up in advance and with him when he went out to see Huber on the 17th. The other one was in all respects as that herein quoted, except that the amount receipted for as paid was $700, and the land described was the northeast quarter of said section, and the unpaid balance was $700; $1,400 having been the purchase price at which defendant told Huber he believed he could get him the land. As a matter of fact, defendant had no authority to sell, or offer for sale, either quarter, unless his testimony that the northwest quarter was listed with him seven years before gave him authority as to that quarter. The telegram he sent on October 15th to the representative of the owner

of the northeast quarter read as follows: "Have offer of $1100 all cash for your northeast quarter Sec. 10-120-77. Will you accept. Wire answer my expense," and the only reply he received was: "Hold offer deal pending, may be sold, will advise soon."

What is said here as to the northeast quarter has no relation to the instant case except in so far as it shows defendant's claim that he only wired in relation to that quarter, and that his only conversation with Huber in which he mentioned a telegram had no reference to the northwest quarter. Defendant contends that, assuming the evidence on the part of the state to be true, yet all that it shows is that, in exchange for the $1,000 which he procured from Huber, Huber accepted his promise contained in Exhibit 1 to get him the land for $2,800, and that no false pretenses can be assigned on his representation that he had wired the owner of the land and got the reply hereinbefore quoted. With this we cannot agree. According to the evidence on behalf of the state, defendant told Huber he would wire an offer of $2,800, and two days later told him he had the quoted reply to that offer. Huber had a right to rely on that as being in effect a representation that an agreement had been completed for the purchase of the land on his behalf, and that the check for $1,000 which defendant procured was to make the cash payment required by the terms of the contract. Had there been nothing more intended between defendant and Huber than the giving of defendant's receipt or so-called contract Exhibit 1 in return for the $1,000, that could have been more easily accomplished on the 15th when Huber was in defendant's office in Gettysburg than by driving twenty miles to Huber's farm to do it on the 17th. The pretense that defendant had wired the offer and had received the reply heretofore set out was a representation of an existing fact on which Huber may well have relied in signing and delivering to defendant the check for $1,000, and Huber testified that he did rely upon that representation. We think the evidence is sufficient to sustain the verdict of the jury.

Defendant's contention that the information does not state facts sufficient to constitute a public offense is based mainly upon the contention already disposed of; namely, that the representation set out in the information was not a representation of any existing fact upon which Huber had a right to rely or upon which he could have relied. The information substantially conforms to the requirements

of the Code of Criminal Procedure in matters of form, and sets out the false pretenses charged in such a manner to enable a person of common understanding to know what is intended. It is therefore sufficient, and the demurrer thereto and motion in arrest of judgment on the ground that it did not state facts sufficient to constitute a public offense were properly overruled. The errors assigned on the admission of evidence are not of sufficient importance to call for separate discussion. There was nothing in the court's rulings in the matter of evidence that was prejudicial to defendant.

The judgment and order appealed from are affirmed.

POLLEY, P. J., and CAMPBELL, and BURCH, JJ., concur. ROBERTS, J., disqualified and not sitting.